**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

**UNITED STATES OF AMERICA,**

        **Plaintiff**

v.                               **Case No: 6:06-cv-0096-Orl-19-KRS**

**DAVID WILLIAMS,**
**JANET BRIDLEY, and**
**FLORIDAUCC, INC.**

        **Defendants.**

_____/

**<u>ORDER AND INJUNCTION</u>**

This case comes before the Court on the following:

1.      Motion for Summary Judgment and Permanent Injunction, filed by Plaintiff United States of America on December 15, 2006; (Doc. No. 72);

2.      Statement, filed by Defendant David Williams on January 16, 2007; (Doc. No. 74);

3.      Table of Contents of Exhibits to Statement, filed by Defendant David Williams on January 16, 2007; (Doc. No. 75); and

4.      Affidavit of Specific Negative Averment, filed by Defendant Janet Bridley on January 18, 2007.  (Doc. No. 76).

**Background**

On June 13, 2001, Defendant David Williams was tried and convicted of various narcotics offenses in this Court in the case of *United States of America v. David Williams et al.*, Case No. 6:01-cr-58-Orl-31-DAB.  (*See* Case No. 6:01-cr-58-Orl-31DAB, Doc. No. 121, filed on June 15, 2001).  Mr. Williams was ultimately sentenced to prison and has remained in custody since at least that date.  As a result of his conviction, a number of items of property belonging to David Williams, or those associated with him, were forfeited as part of the criminal case.  Additionally, property owned, used, or held as nominee by Defendant Janet Bridley, an unindicted coconspirator in the criminal case,[1] was forfeited or sought to be forfeited as part of the separate criminal prosecution in the case of *United States v. Darrell Williams et al.*, 6:01-cr-88-Orl-19KRS.

United States District Court Judge John Antoon II presided over the criminal trial and sentencing of Defendant David Williams.  (*See, e.g.,* Case No. 6:01-cr-58-Orl-31DAB, Doc. Nos. 110-113, 121).  Assistant United States Attorney Matthew Perry was the prosecutor who conducted the trial of  Defendant Williams and who initiated the above-referenced forfeitures of property.  (*See, e.g., id.*).  United States Attorney Paul Perez is the United States Attorney for the Middle District of Florida, but it is not disputed that he was not directly involved in any aspect of the prosecution of Defendant David Williams.  (*E.g.,* Doc. No.  72-7; ¶ 7).

Defendant FloridaUCC, Inc. is a Florida corporation which maintains the Florida Secured Transaction Registry on behalf of the Florida Secretary of State.  The Secured

---

[1]    *See* Case No. 6:01-cr-88-Orl-19KRS, Doc. No. 193, at pp. 1, 7.

Transaction Registry is designed to provide the public with notice of consensual liens given by debtors to creditors.  FloridaUCC maintains a log of all incoming mail that contains UCC filings and the payment of UCC filing fees.  (*See, e.g.,* Case No. 6:06-cv-96-19KRS, Doc. No. 72-2, ¶ 3).

Beginning in late 2004, certain documents were filed with FloridaUCC.  First, FloridaUCC Registry Document Number 200408301021 was filed on November 12, 2004, and purportedly creates an interest between the debtor, "David Williams," and the secured party, "David: Williams III," in the amount of $1,000,000.00.  (*See* Doc. No. 72-3, p. 2). The United States presents undisputed evidence that this document was mailed by David Williams.  (*E.g.* Doc. No. 72-2; 72-3, p. 2).

Secondly, FloridaUCC Registry Document Number 200509631787 was filed on May 9, 2005.  (*See* Doc. No. 72-4, p. 8).  This document names "David: Williams III" as the secured party and purports to create a lien against Matthew Perry, John Antoon II, and Paul Perez in the amount of $100,000,000.00.  (*See id.*).  Attached to this document is a "Security Agreement" between "David: Williams III" and each of the purported debtors.  However, none of the three documents is signed by the named debtors.  Rather, the names of Matthew Perry, John Antoon II, and Paul Perez are typewritten on the signature lines of the agreements.  (*See id.* at pp. 11-13).  Also attached to this document is a copy of a "Bill of Exchange" from "David: Williams III" to the Secretary of the Treasury of the United States of America.  (*See id*. at pp. 17-19).  The Bill directs the Secretary to "charge back" the $100 million to a UCC Contract Trust Account number which matches Mr. Williams' social security number.  (*See id*. at p. 18; Doc. No. 72-3, p. 5).  The United States presented

-3-

undisputed evidence that this document is fraudulent and was created and mailed by Defendants.

On November 28, 2005, FloridaUCC Registry Document Number 200501251640 was submitted to FloridaUCC by sender "Janet M. Bridley." (*See* Doc. No. 72-4, p. 21). This document purports to assign the interest in Document Number 200509631787 from "David: Williams III" to Janet Bridley. (*See id.*). The United States presents undisputed evidence that this document is fraudulent and was mailed by Defendant Bridley.

On January 23, 2006, the United States filed suit against Defendants, seeking a declaratory judgment, injunctive relief, and civil penalties for the allegedly fraudulent acts of Defendants. (*See generally* Doc. No. 1, filed on January 23, 2006). On March 7, 2006, the Court entered a preliminary injunction on behalf of Plaintiff, finding, *inter alia*, that the United States had demonstrated a substantial likelihood of success on the merits and had shown the requisite evidence of injury if the injunction was not granted. As a result, the Court declared two of the purported liens null and void[2] and enjoined Defendants Williams and Bridley from filing any additional liens against Matthew Perry, Paul Perez, and John Antoon II without the Court's consent. (*See* Doc. No. 38).

The United States now files the instant motion for summary judgment, arguing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

---

[2]     The Court granted the motion for preliminary injunctive relief as to FloridaUCC Registry Document Numbers 200509631787 and 200509631787, the liens against the federal officers but did not strike lien number 200408301021, which purportedly creates an interest between the debtor, "David Williams," and the secured party, "David: Williams III," in the amount of $1,000,000.00. (*See* Doc. No. 38).

(*See generally* Doc. No. 72).   Plaintiff contends that the evidence submitted clearly demonstrates that Defendants Williams and Bridley were responsible for the creation and mailing of the lien documents and that the liens were false claims.  (*See id.*).  Plaintiff further contends that by failing to respond to its requests for admissions, Defendants Williams and Bridley have admitted that they are responsible for filing such lien documents through the U.S. Mail.  (*See id.* at pp. 10-11).

In response, Mr. Williams has filed an "Affidavit of Specific Negative Averment," which denies the existence of, *inter alia*, David Williams, the United States of America, the subjects of the lien documents, counsel for Plaintiff, and several federal judges, including the undersigned.  (Doc. No. 74-2, p. 1).  Mr. Williams further states that any person who wishes to rebut the contentions of the affidavit must do so in the manner in which the affiant, "David Williams III©" prescribes.  (*See id.* at pp. 4-5).  Mr. Williams also states that he does not consent to any orders against himself or his property.  (Doc. No. 74, p. 2).  Defendant Bridley also filed an Affidavit of Specific Negative Averment, arguing the same points and in addition denying the existence of Janet Bridley.  (Doc. No. 76).

## Standard of Review

Summary judgment is authorized "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could [not] return a verdict for the nonmoving party."  *Id.*  The

moving party bears the burden of proving that no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

In determining whether the moving party has satisfied its burden, a court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255. The court may not weigh conflicting evidence or weigh the credibility of the parties. *See Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). If a reasonable fact finder could draw more than one inference from the facts, and that inference creates an issue of material fact, then a court must not grant summary judgment. *Id.* (citation omitted).

Once a movant who does not bear the burden of proof on the pertinent claim or defense satisfies its initial burden under Rule 56(c) of demonstrating the absence of a genuine issue of material fact, the burden shifts to the party bearing the burden of proof on the pertinent claim or defense to come forward with specific facts showing that there is a genuine issue for trial. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115-17 (11th Cir. 1993); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-movant must demonstrate that there is a material issue of fact that precludes summary judgment. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir.1991). "A mere 'scintilla' of evidence supporting the [nonmoving] party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir.1990) (citing *Anderson*, 477 U.S. 242). "[T]he nonmoving party may avail itself of all facts and justifiable inferences in the record taken

as a whole." *Tipton v. Bergrohr GMBH-Siegen*, 965 F.2d 994, 998 (11th Cir. 1992) (citing

*United States v. Diebold, Inc*., 369 U.S. 654, 655 (1962)).  All justifiable inferences are to

be drawn in favor of the non-movant, and the evidence presented by the non-movant is to

be believed by the court.  *Tipton*, 965 F.2d at 999 (quoting *Anderson*, 477 U.S. at 255 (citing

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-159 (1970)).  Where the record taken as a

whole could not lead a rational trier of fact to find for the non-moving party, there is no

genuine issue of material fact remaining for trial.  *Matsushita*, 475 U.S. at 587 (citing *First

Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)) (internal quotation marks

omitted).

## Analysis

After considering all inferences drawn from the underlying facts in the light most

favorable to Defendants and resolving all reasonable doubts against the moving party, the

Court finds the United States has met its burden of demonstrating that there are no genuine

issues of material fact remaining for trial.

## I.  18 U.S.C. Section 1345

First, no genuine issue of fact exists with regard to Plaintiff's mail fraud injunction

statute claim.  Title 18 U.S.C. Section 1345(a)(1) permits the Government to commence a

civil action in federal court to enjoin the current or future commission of fraud against the

United States or any agency thereof.  18 U.S.C. § 1345(a)(1).  The Court previously relied

upon this statute in granting Plaintiff's motion for preliminary injunctive relief.  (*See* Doc.

No. 38).  The United States now seeks to make injunctive relief permanent and further

argues that the evidence is clear that lien number 20040830102, which purportedly creates

an interest between the debtor, "David Williams," and the secured party, "David: Williams III," in the amount of $1,000,000.00, is fraudulent and thus should be stricken from the registry.  The Court finds that summary judgment must be granted on all of Plaintiff's section 1345 claims.

To succeed on a claim to enjoin fraud under section 1345, the plaintiff not only must demonstrate that the balance of the four equitable factors – success on the merits, irreparable injury, the balance of hardship on the parties, and the public interest – weigh in favor of injunctive relief,[3] but also must establish that fraud has been committed and demonstrate the extent of such fraud.  *E.g., U.S. v. Brown*, 988 F.2d 658, 663 (6th Cir. 1993).  The United States bears the burden of proof of establishing all of these elements.  *Id*.  Because section 1345 claims are civil prosecutions rather than criminal prosecutions, however, the United States need only prove such elements by a preponderance of the evidence.  *Id*. at 663-64; *U.S. v. Fang*, 937 F.Supp. 1186, 1193-94 (D. Md. 1996).

### A.  Success on the Merits

The United States contends that Defendants' actions constitute mail fraud under 18 U.S.C. Section 1341.  Thus, the United States must demonstrate that Defendants devised a scheme or artifice to defraud or to obtain money or property by false or fraudulent pretenses and, with an intent to defraud, knowingly used the Postal Service or other commercial interstate carrier for the purpose of executing or attempting to execute such scheme or artifice.  *See* 18 U.S.C. § 1341.  The objective of the scheme need not be successful in order

---

[3]     *See, e.g., Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1231 (11th Cir. 2005); *McDonald's Corp. v. Robertson*, 147 F.3d 1301, 1306 (11th Cir. 1998).

for a defendant's actions to constitute mail fraud.  *See, e.g., U.S. v. Schaffer*, 599 F.2d 678, 680 (5th Cir. 1979).

First, the evidence is unrefuted that the United States Postal Service was used to deliver the documents in the instant case.  An examination of the documents in question establishes that they were sent by U.S. Mail, and the unrebutted testimony of U.S. Postal Service employees Sal Porto and Jeff Mitchell and FloridaUCC employee Loree Evans further demonstrates that the documents were sent with valid U.S. Mail tracking numbers and were actually received by FloridaUCC.  (*See, e.g.,* Doc. Nos. 72-2; 72-4; 72-5; 72-6, p. 2).   Secondly, the United States has established by the unrefuted evidence that the purported liens are indeed fraudulent.  None of the purported liens are signed by either attorneys Perez or Perry or by Judge Antoon, nor do any of the documents come with documentation authorizing the signing or filing of the financing statement or security agreements.  In fact, the names of the alleged debtors are typed  throughout the documents, even where a signature is required.  (*See* Doc. No. 72-4, pp. 11-13).  Furthermore, attorney Perry has testified affirmatively that he did not execute the documents, that he has never entered into any kind of transaction with Defendants, and that he had not had any dealings with Defendants other than in his official capacity as an Assistant U.S. Attorney.  Further, Mr. Perry states under oath that he is unaware of the other purported debtors having any such dealings with Defendants.  (Doc. No. 72-7, pp. 3-4).

Finally, the United States has shown that no genuine issue of material fact exists as to whether Defendants Williams and Bridley knowingly engaged in a scheme to defraud by creating and mailing the lien documents.  Document Number 200408301021 was initially

submitted to Florida UCC by sender "David Williams # 24383-018, FCC Coleman USP" on October 8, 2004, but was rejected due to an inadequate filing fee. The document was resubmitted on November 12, 2004 by sender "David Williams." (Doc. No. 72-2; 72-3, p. 2). Two attachments to the document ask the Secretary of the U.S. Treasury to adjust Williams's "UCC Trust Account" in the amount of $1 million and list the account as David Williams's Social Security number. (*See* Doc. 72-3). On the signature page, the document is signed by the secured party, "David: Williams III," but the name of the purported Debtor "David Williams," is only printed. (*See id.*).

Document Number 200509631787, which purports to create an interest between "David: Williams III" and the federal officers, is signed by "David: Williams III." (Doc. No. 72-4). The document lists the same address to receive acknowledgment of the filing for "David: Williams III" as the address listed for David Williams on Document Number 200408301021. (Doc. No. 72-3, p. 2; Doc. No. 72-4, p. 8). Document Number 200509631787 also states that "David: Williams III" has a mailing address in Coleman, Florida, the city in which the federal prison in which David Williams was incarcerated is located. (Doc. No. 72-4, p. 8). Attached to Document No. 200509631787 is a "Bill of Exchange," which directs the Secretary of the U.S. Treasury to "chargeback" $100,000,000.00 to a "UCC Trust Account," which is also Defendant Williams's Social Security Number. (*See id.* at pp. 17-19).

Document Number 200501251640, which purports to assign an interest from "David: Williams III" to Janet M. Bridley, was initially submitted on October 14, 2005 but was rejected because of an inadequate filing fee. (*See* Doc. No. 72-2, ¶ 9). The document was

resubmitted on November 28, 2004, by sender Janet M. Bridley.  (*See id.* at ¶ 11; Doc. No. 72-4, p. 24).  The document is signed by "David: Williams III."  (*See id.* at p. 25).  The document lists the same address to receive acknowledgment of the filing for Janet Bridley as the address listed for "David: Williams III" and David Williams.  (*Id.*; Doc. No. 72-3, p. 2; Doc. No. 72-4, p. 8).

Documents filed in the instant case by Defendant David Williams show that his prison identification number is "24383-018" and that at the time this case was filed, he resided in the federal prison in Coleman, Florida.  Furthermore, documents filed in this case by Defendant Bridley show that at the time this case was filed, her primary address was the same address as that listed by David Williams, "David: Williams III," and Janet M. Bridley on the lien documents.  (*See, e.g.,* Doc. No. 32, p. 2; Doc. No. 46, p. 2; Doc. No. 53, p. 3; Doc. No. 57, p. 9; Doc. No. 58, p. 8; Doc. No. 59, p. 2; Doc. No. 65, p. 3; Doc. No. 70, p. 14; *see also* Doc. No. 72-8).  As these documents form part of the Court file for the instant litigation and were filed by Defendants, it is proper for the Court to take judicial notice of the information contained therein.  *See, e.g., ITT Rayonier*, *Inc. v. U.S.*, 651 F.2d 343, 345 n. 2 (5th Cir. 1981); *Muhammad v. McDonough*, No. 8:04-cv-441-T-27EAJ; 2006 WL 3614937, at *3 n. 4 (M.D. Fla. Dec. 11, 2006).  The evidence clearly establishes that Defendants Williams and Bridley caused the lien documents to be mailed.

Furthermore, the documents evince a clear intent to defraud.  The documents purport to create a security interest to the secured parties "David: Williams III" and Janet M. Bridley, and attached documents direct the Secretary of the U.S. Treasury to release funds to an account bearing Mr. Williams's social security number or have the Secretary credit or

otherwise reduce the amount of debts owed by Defendants.  (*See* Doc. No. 72-4. at p. 18; Doc. No. 72-3, p. 5).[4]

      With the Plaintiff having demonstrated the absence of a genuine issue of material fact on the above issues, Defendants as the nonmovants must present evidence of record establishing that there is a genuine issue of material fact in order to preclude summary judgment.  *E.g., Clark,* 929 F.2d at 608.  Defendants have failed to do so.  The responses filed by Defendants Williams and Bridley fail to address any of the arguments raised by the United States.  Such responses are largely nonsensical and attempt to deny the existence of David Williams, Janet Bridley, the United States of America, the subjects of the lien documents, counsel for Plaintiff, and several federal judges, including the undersigned.  Mr. Williams further states that any person who wishes to rebut his contentions must do so only in the manner in which "David Williams III©" prescribes.  (Doc. No. 74, pp. 1-2, 4-5; Doc.

---

[4]      Although not necessary to this Order, it appears that Defendants never responded to Plaintiff's requests for admissions, and thus such requests should be deemed admitted by the Court.  As the record demonstrates, Plaintiff's requests for admissions were properly and timely sent to Defendants' addresses on record at the time they were mailed.  (*See, e.g.,* Doc. Nos. 72-10, 72-11).  Subsequently, Plaintiff represents that it learned Defendants had relocated to new addresses.  In such situations, the law is clear that service is proper and complete upon mailing.  Fed. R. Civ. P. 5(b)(2)(B).  Because the requests for admissions were served by mail on Defendants' addresses of record and were neither answered or nor an objection to them filed, those requests are properly deemed admitted for purposes of the instant motion regardless of the failure to receive the requests.  *See, e.g., Attick v. United States*, 904 F.Supp. 77, 79-80 (D. Conn. 1995); *Freed v. Plastic Packaging Materials, Inc.*, 66 F.R.D. 550, 551-52 (E.D. Pa. 1975); *Johnson v. Tuff N Rumble Mgmt, Inc.*, No. Civ. A. 99-1374, 2000 WL 622612, at * 3 (E.D. La. May 15, 2000); *see also United States v. 2204 Barbara Lane*, 960 F.2d 126, 129 (11th Cir. 1992).  Pursuant to Plaintiff's requests for admissions, to which there was no response or objection, Defendants have thus admitted that they caused the documents to be mailed to FloridaUCC through the U.S. Mail.  (*See* Doc. Nos. 72-10, 72-11).

No. 76).  The Court rejects such arguments as frivolous.

For these reasons, the Court finds that the United States has established that Defendants committed mail fraud under 18 U.S.C. Section 1341.

### B.  Irreparable Injury, The Balance of Hardships, and the Public Interest

In order to prevail on its request for permanent injunctive relief, the United States must still demonstrate that the balance of the three remaining equitable factors counsel in favor of granting the requested injunction.  The Court finds that Plaintiff has demonstrated that all three of such factors weigh in favor of granting the requested relief.

First, there is no genuine issue of material fact with respect to whether Plaintiff and the federal officers will suffer irreparable harm if the lien documents are not permanently removed from the registry and Defendants are not enjoined from filing further liens against the three named individuals.  The Eleventh Circuit has stated that irreparable harm or injury is " 'the *sine qua non* of injunctive relief.' " *See, e.g. Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (quoting *Northeastern Fla. Chapter of the Ass'n of Gen. Contractors v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir.1990)).  In order to qualify as irreparable, harm or injury must be "actual and imminent."  *Id*.  In determining whether harm is irreparable, courts consider, *inter alia*, the nature of the harm alleged and the delay of the movant in seeking relief.  *See, e.g.*, *Tom Doherty Associates, Inc. v. Saban Entertainment, Inc.*, 60 F.3d 27, 39 (2d Cir.1995); *Pippin v. Playboy Entertainment Group, Inc.*, Case No. 8:02-cv-2329T30EAJ, 2003 WL 21981990, at *2 (M.D. Fla. 2003).

Once illegal activity is clearly demonstrated by a plaintiff under 18 U.S.C. Section 1345, the remaining equitable factors of continuing irreparable injury, the balance of

-13-

hardships to the parties, and the public interest are presumed to weigh in favor of granting injunctive relief. *See U.S. v. Fang*, 937 F.Supp. 1186, 1199-1200 (D. Md. 1996) (citing 42 Am.Jur.2d § 160). Where, as here, the United States has demonstrated success on the merits of its claim, the presumption is a strong one. *See id*. at 1200 ("[T]he stronger the probability of the Government succeeding on the merits, the greater its entitlement to preliminary injunctive relief."). Defendants have offered no evidence or argument in the instant case to rebut the presumption that the balance of equities weighs in favor of granting injunctive relief. Thus, the Court finds that all of the equitable factors demonstrate that an injunction is warranted in the case at bar.

Even if no such presumption is applied, the United States has established that the three remaining factors weigh in favor of granting injunctive relief. Allowing the purported liens and supporting documents to remain in the Registry, and thus in the public records, will restrain the ability of the falsely named debtors to engage in financial transactions. Failure to preclude Defendants from filing any additional lien documents without the Court's permission would leave the named debtors at risk for further harassment and interference with their official duties. By contrast, Defendants will suffer no hardship from having their fraudulent liens removed from the public record and from the Court enjoining them from filing liens against these three individuals in the future. In addition, the public interest is clearly served by removing from the public record false and fraudulent documents which could inadvertently be relied on in commercial business dealings and by enjoining Defendants from engaging in such fraud in the future. *See, e.g., Universal Marine Ins. Co. Ltd. v. Beacon Ins. Co.,* 581 F.Supp. 1131, 1138 (D. N.C. 1984); *accord Tempur-Pedic Int'l,*

-14-

*Inc. v. Waste To Charity, Inc.*, 2007 WL 535041, at *11 (W.D. Ark. Feb. 16, 2007). By expressly legislating to make injunctive relief available in this setting, Congress has already declared such fraudulent activity to be harmful to the public. *See Fang*, 937 F.Supp. at 1199, 1200.

For these reasons, the Court grants summary judgment on Plaintiff's Section 1345(a)(1) claim.

## II.  False Claims Act

Counts III and IV of the Complaint allege violations of the federal False Claims Act ("FCA"). The United States moves for summary judgment solely on the issue of whether Defendants are liable for violating the substantive provisions of the Act (Count IV of the Complaint). The Court finds that there is no genuine issue of material fact regarding this issue and that the United States is entitled to judgment as a matter of law.

Section (a)(1) of the FCA provides, in pertinent part, that anyone who knowingly presents or causes to be presented to an employee of the United States Government a false or fraudulent claim for payment is liable to the Government for a civil penalty and certain potential damages. 31 U.S.C. § 3729(a)(1). It is not necessary that payment actually be made as a result of the fraudulent document, as the FCA extends to fraudulent *attempts* to cause the Government to pay out sums of money. *See U.S. v. Neifert-White Co.*, 390 U.S. 228, 233 (1968) (emphasis added). Here, the United States claims that the mailing of the February 23, 2005 document labeled "Bill of Exchange," was a violation of the False Claims Act. (Doc. No. 72-4, pp. 17-19).

First, the Court has already established that Defendants Williams and Bridley are the

-15-

cause of such document and that the $100 million claim is fraudulent.[5]   Secondly, an

examination of the document at issue reveals that it is clearly a "claim for payment" under

the FCA.  The document directs the Secretary of the United States Treasury to "charge back"

$100 million to an account bearing Mr. Williams's social security number and provides that

a failure to respond within thirty (30) days "shall constitute confirmation ... that the

Undersigned's Account has been adjusted as herein requested."  (*Id*. at p. 18).   Finally,

Plaintiff has established that the document was mailed to the Secretary of the U.S. Treasury

and thus was presented to an employee of the United States.  The first page of the document

contains a U.S. Certified Mail tracking number which, along with the testimony of Mr.

Porto, confirms the bill was mailed from the Clarcona, Florida post office on April 14, 2005

and received by the U.S. Treasury Department on April 20, 2005.  (*See id.* at p. 17; Doc. No.

72-5, p. 3).[6]

   For these reasons, the Court grants summary judgment in favor of Plaintiff on the

issue of whether the document labeled "Bill of Exchange" violates the False Claims Act.

---

[5]     *See supra* Section I-A of the Court's opinion.

[6]     Using *Mapquest.com* (http://www.mapquest.com), the Court takes judicial notice
that the Clarcona branch of the United States Post Office was located
approximately 0.7 miles from Defendant Bridley's home address and the
Hiawassee Post Office branch was located less than 2.4 miles from Defendant
Bridley's then home address at 5543 Breckenridge Circle, Orlando, Florida
32818.  (*E.g.*, Doc. No. 72-4, p. 26).  A Court may take judicial notice of the
driving distance between two points located in the record using mapping services
whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b);
*Gordon v. Lewistown Hospital,* 272 F.Supp.2d 393, 429 (M.D. Pa. 2003); *Richard
v. Bell Atlantic Corp.*, 209 F.Supp.2d 23, 27 n. 2 (D. D.C. 2002); *see also* 29
Am.Jur.2d *Evidence* § 78 (Supp. 2006).  Defendant Bridley's home address was
also listed as the address to which acknowledgments should be sent on the UCC
Financing Statement.  (Doc. No. 72-4, pp. 24, 26).

### III.  Section 679.625, Florida Statutes

Count V of the Complaint states that Plaintiff is entitled to statutory damages for a violation of Section 679.625, Florida Statutes.  In the instant Motion, Plaintiff seeks summary judgment on its entitlement to such damages under the statute.  The Court finds that summary judgment must be granted on Plaintiff's claim.

Florida law provides that a person named as a debtor in a filed record may recover damages from a person who, *inter alia*, "[f]iles a record that the person is not entitled to file under s[ection] 679.509(1)." § 679.625(5)(c), Fla. Stat. (2003). Section 679.509(1) provides that a would-be creditor may file a financing statement only if the financing statement is authorized by the debtor, either by authorizing the filing in an authenticated record or by authenticating, or becoming bound as a debtor in, a valid security agreement. § 679.509(1) & (2), Fla. Stat. (2004).

The United States correctly contends that Document Number 200509631787 constitutes a record filed by Defendants which they were not entitled to file under Section 679.625.  The record establishes without conflict that Defendants Williams and Bridley are the cause of such document and that the $100 million claim therein is fraudulent.[7]  The document and the attached "Security Agreement" for each named debtor lacks each debtor's signature or any other authorization for such filing.  The document is clearly a financing statement.  (*See* Doc. No. 72-4, pp. 8-10) (entitled "UCC Financing Statement," along with "UCC Financing Statement Addendum").  Defendants' responses do not attempt to rebut any of these allegations.  Thus, the Court finds that summary judgment on this issue is

---

[7]     *See supra* Section I-A of the Court's opinion.

warranted based on the unrefuted evidence of record.

### IV.  28 U.S.C. § 2201

Count I of the Complaint seeks a declaratory judgment stating that Defendants had no factual or legal basis to file the FloridaUCC Registry Documents and that such documents are null and void.  The Court finds that there is no genuine issue of material fact regarding this claim, and thus that Plaintiff is entitled to judgment as a matter of law.

28 U.S.C. Section 2201 authorizes federal courts to issue a declaration stating the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought.  28 U.S.C. § 2201(a).  For reasons previously stated, the Court finds that the filing of the fraudulent lien documents constituted mail fraud, a violation of the False Claims Act, and a violation of the requirements for filing financing statements under Florida law.  As such, Plaintiff is entitled to a declaratory judgment that the lien documents are false and thus null and void.

### Conclusion

Based on the foregoing, the Motion for Summary Judgment and Permanent Injunction, filed by Plaintiff  United States of America on December 15, 2006, (Doc. No. 72), is **GRANTED**, as follows:

1.     Pursuant to Count I of the Complaint, the following Documents filed in the FloridaUCC Secured Transaction Registry are hereby **DECLARED null and void**:     a) Document Number 200408301021; b) Document Number 200509631787; and c) Document Number 200501251640;

2.     Pursuant to Count II of the Complaint, Defendants David Williams and Janet

Bridley, their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them who receive actual notice of this injunction by personal service or otherwise, are hereby **ENJOINED** from filing, or attempting to file, with the Registry any lien or other document against John Antoon II, Paul Perez, or Matthew Perry, without first obtaining an Order from this Court approving the filing of that lien or other document;

3.     Pursuant to Count II of the Complaint, Defendant FloridaUCC is **ORDERED** to permanently remove Document Number 200408301021, Document Number 200509631787, and Document Number 200501251640 from the Registry and any other associated or linked databases or records;

4.     Pursuant to Counts IV and V of the Complaint, the Court finds that Defendants David Williams and Janet Bridley are liable for the appropriate penalties under the False Claims Act and Section 679.625, Florida Statutes; and

5.     Plaintiff United States of America shall have twenty (20) days from the date of this Order to submit a motion for final judgment with appropriate evidentiary support and citation of authority regarding its claims for civil penalties, damages, and costs.  Defendants Williams and Bridley shall have ten (10) days thereafter to respond.

**DONE** and **ORDERED** in Chambers in Orlando, Florida this 6th_ day of March, 2007 at 5:28 p.m.

PATRICIA C. FAWSETT, CHIEF JUDGE
UNITED STATES DISTRICT COURT

Copies furnished to:

Counsel of Record

Unrepresented Parties